Our last case on the morning docket is Haar v. Bell Missouri, LLC, case number 5-24-1234. Appellant, whenever you're ready, you may proceed. Please identify yourself for the record. May it please the Court, Justices, Counsel, good morning everyone. My name is Nicole Winters, and I represent the defendant, or the appellant in this matter, identified as Bell Missouri, also known as Taco Bell. This is an appeal from a final judgment in order stemming from a two-day jury trial in St. Clair County before Judge Christopher Kolker. The trial occurred over two days, again on September 9th of 2024. It's a negligence action that involves allegations from appellee plaintiff, Mr. Haar, in which he had a fall at our restaurant on December 9th of 2022. The fall involved an alleged hazard, which was a floor mat at the side entryway to our restaurant. At the time of the fall, Mr. Haar was 83 years old and had a medical history of osteoarthritis in both knees, left and right. The jury returned a verdict in favor of Mr. Haar for $300,000 plus cost. A timely filed motion for a new trial was filed and denied, and this appeal followed. Three of the four issues that were presented within our post-trial motion, or excuse me, our motion for a new trial, three of those issues are incorporated here and fully briefed. The three issues include one issue of the exclusion of causation evidence as it pertains to Mr. Haar's knees. The second issue is the exclusion of evidence pertaining to a lack of prior incidents or falls at this Taco Bell location on the specific date of Mr. Haar's fall. The third issue is the exclusion in the complete bar of our defense liability expert, professional engineer, Mr. Robert Keeney. Today I wish to focus on issues one and two, specifically the pre-existing knee condition and causation, as well as the exclusion of our defense expert. If time allows, I'll touch upon the lack of prior incidents and falls. The standard of review here is an abuse of discretion, and here the evidentiary rulings were so substantially prejudicial to the outcome, to the defense that the outcome of the case was affected. Taco Bell was deprived of all available defenses. It timely and properly presented, most significantly, Dr. Lehman's cross-examination testimony. Which brings us to issue one, expert evidence or testimony of Dr. Lehman, Mr. Haar's treating orthopedic surgeon, was completely excluded. His evidence was applicable to the cause of Mr. Haar's fall, not the pre-existing injury. So the facts are really important here. Before the fall, Mr. Haar had osteoarthritis, both knees, so severe that Dr. Lehman classified it as bone-on-bone, requiring surgery. After the fall... How old is the plaintiff? At the time of the fall, I believe he was 81. I think at trial he was 83 or 84. After the fall, Mr. Haar suffered a shoulder injury. It's a very basic analysis that was supported by Dr. Lehman's testimony. The knee condition was not related to the shoulder condition. The knee condition was related or could have been a potential cause of the fall. There are several cases that are cited within the appellate briefs that support our position. And one in particular, well actually all three of them, were relied on pretty heavily during the pretrial arguments in this case. First is the Supreme Court case Voykin. This is the controlling authority for what's come to be known as the same part of the body rule, meaning evidence of a pre-existing injury is not admissible to prove causation for a subsequent injury. It's a relevancy standard. In expert testimony, if that type of evidence, same injury, same injury, is going to be presented, an expert is required. We cited Voykin within our pretrial motions as support for Dr. Lehman's testimony coming in. And we cited the Voykin case, which seems to be a little bit of contention within the opposing briefs here, for the proposition that an expert is needed to opine on causation. And here, Dr. Lehman opines that the knees could have been a cause for the fall. The trial court completely excluded all of that testimony. During pretrial arguments in this case, a Fifth District case was actually presented to the parties by the circuit court. That is the Autenried matter, in which it's distinct, but it does provide direction. In Autenried, this honorable court explained that phantom injuries, so similar to prior injuries, could not be used to establish causation for subsequent injuries. So in that case, a plaintiff was bit by a dog, and they weren't allowed to present testimony that the preexisting back injury could have been caused for the subsequent injury. The court defined it as essentially guesswork. We don't have guesswork here. Mr. Farr had a preexisting condition, osteoarthritis, that could have caused the fall. Neither Voykin nor Autenried address the preexisting condition that could contribute to an incident, so the negligence or the issue here, which leads me to the First District case. It's cited within our brief as 23E or under 23E, simply to show how the operation of the Voykin or the Autenried rule works. So in Popolo, this is a case where a plaintiff had fallen and suffered a broken ankle. At the time of the fall, the plaintiff also was suffering from Parkinson's disease. In that case, the court explained that the underlying medical condition, the Parkinson's disease, could have been caused for the fall. It did not make his injury necessarily more likely, but it made the incident more likely. So again, the facts here are so important. I just want to do a little comparison of our case, Mr. Farr to Popolo. So our case, Mr. Farr, again, has osteoarthritis, and his doctor explained that could cause the fall. He didn't say the osteoarthritis could cause the shoulder injury. Similar here in Popolo, the Parkinson's disease, the plaintiff in that case, could cause the fall, not that the Parkinson's could cause the broken ankle. Because of its importance, I just want to highlight and emphasize portions of Dr. Lehman's testimony, which are fully attached within the common law record, the report of the proceedings, and specifically in Appendix 32 within the appellant's brief. The full evidence testimony of Dr. Lehman was provided. Dr. Lehman took x-rays and opined that Mr. Farr had bone-on-bone osteoarthritis, the left knee worse than the right. He had actually scheduled a left knee arthroplasty for Mr. Farr on December 14th of 2022. And I emphasize that timeline because December 14th, 2022, was a pre-scheduled surgery for five days after the fall. So five days before he was set to go in to have surgery, Mr. Farr has his fall. And again, I want to emphasize some of this testimony because it leads into my next point regarding the speculative or the alleged speculative nature of Dr. Lehman's testimony. And again, this is fully attached in the appendix as well as the report. Question of Dr. Lehman. Could bone-on-bone osteoarthritis cause an individual's knees to become weak? Answer, it could. Question, could that weakness cause an individual to have difficulty walking? Answer, it could. Question, could weakness cause an individual to be at a greater risk to slip, trip, or stumble? Answer, it could. And finally, could Mr. Farr's underlying osteoarthritis in both of his knees could have caused or contributed to cause the fall of December 9th of 2022? Could have. In response to four specific questions upon cross-examination, Dr. Lehman provided testimony of what could have been happening with Mr. Farr's condition. It should be noted here that contrary to the opposing brief, Dr. Lehman provides sufficient causation testimony. This court, this district, stated that individuals can opine what could have or might have caused an injury. So again, he says multiple times this condition could have caused the incident. Going one step further, and I want to point it out here, there is an argument that Dr. Lehman didn't provide this testimony within a reasonable degree of medical certainty. Again, this court has said that that's not necessarily, there's no magic to that language. That language is simply a flag to the jury that the witness isn't guessing. So here, Dr. Lehman provided testimony under the precedence set by this district. It was an abuse of discretion to exclude this evidence. It substantially prejudiced the defense and impacted the outcome of the case. The jury was prohibited from considering a relevant piece of evidence concerning another opportunity or cause, if you will. They were not able to consider any other source except approximately nine seconds of surveillance video, which brings me to Issue 2, the complete bar of our causation expert, Mr. Robert Keeney. Before getting into the meat of this argument, I want to address a couple of procedural points, if I may. The substance of the posing brief and the pretrial motion seems to be there were points that Mr. Robert Keeney was not properly or timely disclosed by the defense. And I simply want to point to the record. The argument was unambiguously waived at the report on pages 9 and 11. Secondarily, the pretrial request to the circuit court was not to strike Mr. Keeney. It was to limit his testimony or strike any of his testimony as it pertains to an enhanced surveillance video, which I'll lead into. There was never a request to have- Are you saying that the trial court went beyond the release request? Yes, Your Honor. There was not a request written to be stricken of Mr. Keeney. With those points in mind, I want to go into Mr. Keeney briefly and his qualifications. He is a professional engineer with over, I think it's 30 years of experience. He's licensed in 23 states, including the state of Illinois. From what I can tell, the argument is that his- because the record is a little bit unclear on whether this was- he was being stricken for a foundational purpose or as a discovery sanction. To the extent that it's for a foundational purpose, I want to reiterate that Mr. Keeney is properly qualified by skill, education, experience. He timely provided a report and a supplemental report. For this specific case, when he was offering his opinions, he relied on hours of surveillance video from that specific day, leading up to the fall and after the fall. He relied on prior deposition testimony of witnesses, including Taco Bell witnesses, as well as the plaintiff and his wife. He reviewed pictures and then he reviewed approximately 20 seconds. I don't remember exactly the snippet of time, but of the fall itself. Just briefly, with that fall, the argument- he took that snippet of the fall and he enhanced it. He used AI, if you will, artificial intelligence. He timely supplemented, so the argument seems to be that he altered the integrity of this video and it's simply not true. He submitted an addendum, and I just want to read it briefly because I'm hitting my time point here. The enhanced video was produced by taking the video and making no changes to the original furnished video provided to ESI. The enhancements were used. They were sliders. They were used to clarify the area of interest, to fix the compression, improve detail, and de-blur it. Basically, he took a filter and brightened the video. His opinions outlined in his report were not solely relying upon that enhancement video. He had a whole other host of evidence that he was relying upon when he fashioned his opinions. Rather than limiting the testimony or even allowing proper discovery to be conducted, a discovery deposition, a deposition prior to trial, the circuit court simply struck all of his testimony, including the enhanced video. Just briefly, I want to touch on Issue 3 as it relates to exclusions pertaining to the lack of- We had hours upon surveillance video that witnesses were going to testify. Nothing occurred to substantially affect this floor mat, which is the test that is to be applied for the admission of this type of evidence. And I just simply want to point to the report at page 86, where the circuit court makes a statement that this type of evidence, evidence of no prior incidents, is, quote, never admissible, end quote. Just to summarize briefly, the defense here was essentially robbed and stripped of every piece of evidence to defend the case, to rebut the case, at times even going further than the requested relief. For these reasons, we believe the circuit court abused its discretion, simply didn't apply the facts to the case, and we're asking for a reversal of each of these issues. Thank you. Thank you, counsel. Adelaide, you may proceed. Please identify yourself for the record. Thank you, Your Honor. My name is Brady McAninch. I represent the plaintiff, Gerald Hart, in this matter. I will take- I'll try to be brief here, as I do think we've been pretty good at laying out all the issues and the written documents, but I'll take them in order that the defense dealt with them in their arguments. Specifically, let's take Issue 1 first, which is the limiting of Dr. Lanyon's testimony. Defendant failed to lay proper foundation to allow this in. This is pretty well briefed. Defendant initially tried to rely exclusively on Voightkin, then began running from Voightkin, and then cited Papalaw, which is an unpublished case out of the First District Appellate Court. But even applying that standard, they don't need it. So if you actually read the testimony in Papalaw, which is included in the court case itself, that expert testified to watching video of the fall, understanding how the fall occurred, and then tied in exactly how, in that case, the plaintiff's issues led to the fall, and then testified that he believed it was more likely than not that it was the cause of the fall. In this case, we don't have that. In the evidence deposition, defense counsel never gave Dr. Lanyon any information as to how the fall occurred. The fall could have occurred, as far as Dr. Lanyon was concerned, when someone came up and hit him in the back with a baseball bat. How his knee could have impacted it required a foundation to be laid. It never was in this case. There was never anything. One only needs to look to defendant's discovery deposition of Dr. Lanyon where the proper foundation is. Did he look at the video? Not in the evidence deposition. That was given to him in the discovery deposition, and I think it would be a different story if we were dealing with that here. Was there a close environment? A few months apart, Your Honor. And there is no mention at all during the evidence deposition of anything as it relates to the fall. In fact, the discovery deposition, when shown in the video, he actually blamed the floor mat in issue, which I assume is why it wasn't brought up during the evidence deposition and why it wasn't shown. So what was the plaintiff's theory of liability? The floor mat, Your Honor. The floor mat tripped him? That the floor mat was improperly placed on the ledge, causing Mr. Harsfoot to get caught by the lip of the floor mat and then fall, as shown in the surveillance video. So, as stated by defense counsel, we do have video, but no video was shown to Dr. Lehman that day. Nothing was asked to him specifically about if he even knew how the fall occurred or anything that would help lay the foundation to tie the injury, the alleged injury to the knees, to the fall. I would also point out that in pre-trial motions on this very issue, defense filed a motion either to admit the testimony or to allow second evidence deposition of Dr. Lehman. They never did that. They had every opportunity to either subpoena Dr. Lehman for trial or take his evidence deposition of them as their expert witness to accomplish this testimony and lay that foundation. They failed to do so. At any point, they asked for that belief initially in their motion. It was not actually argued that day, and then it wasn't sought. It is speculative testimony. Yet, it could, it could, without any foundation laid, is not enough for an expert opinion here. Going on to the third issue, or my third issue, but their second issue as far as the expert is concerned. I won't belabor the point because I think I did so in my brief, so I won't go through it again, but the timeline here is incredibly important. Defense counsel maintains that their expert was timely disclosed. That is inaccurate, as laid out by us, by a plaintiff's counsel in our brief. I agreed, and this email is attached to the record, that I would not oppose their expert purely on the basis of timeliness issued, which is correct, I did not. This is before this additional video was produced less than 30 days before trial. Less than 30 days before trial, we have a report from their expert disclosed that identifies an enhanced video, does not identify how it was enhanced, does not identify who enhanced it, does not identify what it is, or does not even disclose that video. That took additional work from our, from myself and my partner to get that. Again, 30, less than 30 days prior to trial. Defense counsel came up here and asserted that the video was enhanced by our expert. That is also untrue, based on their own expert's report. He submitted it to his IT department that then used software that is owned and proprietary from another entity to enhance it. It is not simply sliders, and we dealt with this in our motions. We actually contacted the company that owns that AI software. It is proprietary AI software. They specifically mentioned not to use it in forensic purposes because it changes the underlying video. It's not the same video. It's about 900 times more data than the original video. We even contacted Topaz Labs, that's the name of the AI software, to confirm that the very things that defense counsel produced, their expert's IT department did, would modify the video. And they confirmed that it did. And that is all part of the record and part of our briefing. This is not simply changing the sharpness or changing the color on a video. That is just untrue, and they have not provided anything to support that, despite having significant evidence to the contrary from the very company that performed the enhancement of the video. One needs only go to Topaz Labs' YouTube website and watch their advertisements. There's a reason they're not forensically accepted, and most notably, their expert was disclosed. He gave no expertise in video. They didn't disclose anyone from the IT department and did not disclose anyone from Topaz Labs. The case they rely on primarily is the Erie Marriage of Sadowski case. It's a 2019 third district case, and it provides a series of factors that should be looked at. And primarily, it begins looking at prejudice. I cannot think of much more prejudicial than dropping on a new piece of evidence after the close of evidence, after expert deadlines have passed, which, as we outlined in our brief, they have, that after that, within 30 days of trial, this is disclosed. I also take issue with defense counsel's assertion that I didn't ask for the relief of the expert to be stricken. I did. Admittedly, I did ask for it orally that day. The only reason it was not asked for in the brief is because, due to the time, I was on vacation with my wife, shortly prior to the birth of our second child, and I filed that motion while gone. So there were several typographical errors in that motion. But the relief was sought, and that was clarified at that hearing, as is shown on the record that has been submitted to this court. That relief was sought. So that transcript would reflect that motion? That would. That would reflect that we specifically asked for that, and I clarified that it was my mistake that I did not ask for that in my motion, that that is what I meant to do. In fact, if you read the entire motion, it does indicate that's what I'm asking for, and in my wherefore clause, I fall on that sword. I failed to do so. I was drafting it with a very angry wife staring over me, so I apologize for that. But it was requested by us, not by the court. That happens when you get in the room for a vacation. What's that, Judge? Getting a drink out and filing a motion. It was not the most fun I've had. But it happens. You know, that's the point of litigation. That stuff does occur. But, again, this is not a simple environment. How much later was it when the baby came? Just a few months. It was one of our last trips. Baby is fine now. That also affects matters. But, again, evidence had closed before that. The only agreement between parties at that point for expert disclosures had passed, as outlined in our brief and our timeline. Again, I did, at the request of defense counsel, admit that I would not oppose an expert purely on a timely basis, and I would not. It was only once we saw the disclosure and saw this brand-new video and evidence footage that caused us great concern. Our expert had already been deposed. I couldn't send the updated or enhanced video to my expert out of fear that it would ring the bell. How could he distinguish between what he's testifying to? And the idea that we could seek some sort of discovery or learn about this video 30 days before trial, defense could have asked for a continuance. They didn't. In fact, what they did is suggest that I should. And that's in the record as well. Defendant's co-counsel, James Craney, suggested that they wouldn't oppose if plaintiffs sought a continuance at that late hour. I had an 83-year-old plaintiff that had slipped and fallen at a Taco Bell. I wanted everything I could to try and move this case forward. But defense could have sought a brief continuance to conduct that discovery. They failed to do so. Just so I'm clear. Yes, Your Honor. Kenny, right? Yes, Your Honor. He was disclosed as an expert prior, but then this was the supplement. No, the supplement was actually done at my request. So he was disclosed. Again, late though, I said I wouldn't oppose it. He was disclosed, and in that initial disclosure was referenced in enhanced video, which I didn't have to reach out to defense counsel and say, what is that? It was then sent, I think, two supplemental reports. I think it is two separate ones. One identifying the software used, and then one identifying the options chosen on the software.  So the initial disclosure did not include the video. Right. Nor did it even include how the video was done, who did it, or what happened. Those had to be requested, and the video itself had to be requested. By the time we got the second supplemental report, Your Honor, I think it was about 23 days before trial. Okay. And I would note that in the period when the supplemental reports were given, their expert was already supposed to be deposed. We had a deposition date that I admitted to counsel once we learned that there was a new video that we couldn't substantiate. And again, I would just point the Court to apply the factors in marriage of Saddowski. And the other thing I want to point out there, again, it's really the only case that they point to that such a sanction isn't warranted. In that case, admittedly, the Court found it to be an abuse of discretion to strike an expert. But the facts there are very important. In that case, there was an expert report that was changed shortly before trial. But nothing substantively was changed. Just the order in which the report listed things was changed. And that was agreed to by both parties, that it was just an order of the report. And in that case, the Court found that's too far. Again, we're not talking about a change in order here. We're talking about the production and creation of a brand new video without disclosing anyone that could even substantiate that video or how it was done. And in fact, Topaz Labs did confirm for us, this is also in the record, that all of their AI software is proprietary. So there's no one outside of Topaz Labs that could even offer testimony as to how their AI algorithms would have changed that video. Other than them acknowledging that it was changed and that they recommended not to be used in legal settings for that reason. Now, briefly, to touch on the similarity of circumstances here as far as the floor mat and its movement, again, I would point out that there was testimony at trial from the two representatives of Taco Bell that the floor mat didn't move and that they used the same entrance. And it was even referenced in the defendant's closing argument. The defendant's position that they met the standard is just inaccurate. They cite two cases, Gallick and Jones. In Gallick, the issue is a permanent building structure that people walked over. Admittedly, there's no timeline given in Gallick, but given that it's a permanent building structure, it was there for more than, at minimum, a few hours. The second case they cite is Jones, Jones v. McCook, Drumbell. That's actually a bailor-bailee case. It's not only non-analogous, it's not relevant. It has additional elements that we don't have here, specifically on notice when you hand over the bailment. So it's really of no value here. But there's no testimony that was given that would in any way substantiate that this mat didn't move. In fact, our expert testified that it did. And then finally, just briefly, I would say that defendants have failed in their proffers as detailed to do to actually preserve these issues. They could have had their expert come in and testify exactly what it would have been. They could have had Dr. Lincoln come in and testify. They could have had their people testify about the substantial mat movement or lack thereof. They failed to do any of that. So I do not think that they have even preserved any of these issues to be heard today. Thank you very much for your time. I appreciate it, Your Honor. We would ask that the court allow the jury verdict to stand. Thank you. Rebuttal. Proceed. Thank you. I just want to touch on a few quick points. First, in regards to the theory of liability, that theory continued to shift throughout the case, so as did the evidence that was analyzed, if you will. In regards to Dr. Lehman, I want to point to the full evidence transcript of Dr. Lehman is attached in Appendix A, and I would just invite the court to read that entirely for the foundational purpose. Secondarily, the discovery deposition was also attached. It's at Common Law Record 352. So a fuller context, if you will. The evidence testimony was just honed in on. The proper foundation was still laid. In regards to causation, we identified from the very outset of written discovery and continued to supplement Dr. Lehman as a causation expert. We had him subpoenaed to appear, and the court had ruled that the causation testimony that was properly solicited during his evidence deposition was going to be stricken. So rather than subpoena him in for this purpose, our offers of proof were made. Second, in regards to the timeliness that keeps seeming to rear its head, it was simply waived, and the deadlines were all timely and properly, again, waived. It's at the report of the proceedings on page 9 and 11. In regards to Keeney, I want to point to his addendum that was timely produced that outlines the software that his engineering firm utilized. He did not take the facts of this case or the prior evidence or anything that he reviewed and created new evidence. He simply did not do that. You know, there's the contention that we should have done additional work and that opposing counsel did the additional work. His additional work was hearsay from a facts-in-question chat box with individuals whose names keep kept changing. Mr. Keeney was qualified, he was reliable, he was timely, and he did not create new evidence. And for this purpose, too, I just want to simply point to the record at, excuse me, the report at pages 13 and 14. This is a portion where the court is beginning to strike Mr. Keeney, and my law partner, Mr. James Craney, states, he doesn't even ask for the entire expert, the list of his opinions. In the motion, he doesn't ask for the entire expert to be barred, to which Mr. McAnish says, I certainly did. And again, for time, I'm going to jump forward a couple lines, at which point my law partner, James, grabs or obtains a copy of the motion and reads through the requested relief. Requested relief in the motion, the enhanced video constitutes untimely and prejudicial new evidence. Both of those points are unfounded. The defense's failure to disclose the methods of software used to enhance the video further prejudices the plaintiff. The software was disclosed. And C, and most importantly, the full requested relief culminates in the wherefore clause. The enhanced video should be barred, or at a minimum, the expert's testimony should be limited. Wherefore, the expert's testimony should be confined to what was observable in the original video footage and should not include any conclusions drawn from the enhanced portions that were created outside the established discovery process. There is nothing in there that says Mr. Keeney or his separate opinions pertaining to the format should be stricken entirely. Again, we'll reiterate that we think each one of these evidentiary rulings is grounds for reversal. Thank you all for your time. All right, thank you, counsel. We will take this matter under advisement and issue a ruling in due course.